# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMOS VANDERHOFF,

    Plaintiff,

        v.

CITY OF NANTICOKE and POLICE
CHIEF THOMAS WALL, in his
Individual and Official capacity,

    Defendants.

NO. 3:18-CV-01071

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion to Dismiss (Doc. 14) filed by Defendants the City of Nanticoke (the "City") and Police Chief Thomas Wall ("Wall") (collectively, where appropriate, "Defendants"). Now operating under the Second Amended Complaint, Plaintiff Amos Vanderhoff ("Vanderhoff" or "Plaintiff"), a City police officer, alleges that Defendants violated his rights under the United States Constitution, the Fair Labor Standards Act, 29 U.S.C. § 209 *et seq*. ("FLSA"), and state law. Specifically, Vanderhoff contends that Defendants have placed an unlawful prior restraint on his speech, retaliated against him for filing this lawsuit, interfered with his right to intimately associate with family members, denied him overtime pay, and retaliated against him for seeking worker's compensation and heart and lung benefits. Defendants seek dismissal of all claims.

The motion to dismiss will be granted in part and denied in part. Because Plaintiff fails to state an intimate association claim and leave to amend would be futile, that claim will be dismissed with prejudice. But, because the other claims for relief in the Second Amended Complaint are plausible, the First Amendment prior restraint, FLSA, state law retaliation, and First Amendment retaliation claims will not be dismissed.

# I. Background

The facts as alleged in the Second Amended Complaint are as follows:

Vanderhoff is employed by the City as a police officer. (*See* Doc. 13, ¶ 1). Wall is the City's Police Chief. (*See id*. at ¶ 3).

On or about May 21, 2018, Vanderhoff was told by Wall "that he is not allowed to talk about Defendant Wall to the public and that his family has to do the same as well, including but not limited to his cousin, who owes [sic] a beauty shop in the City of Nanticoke." (*Id*. at ¶ 14). Vanderhoff's family also includes his father and son who resides with him. (*See id*. at ¶ 15). Wall stated to Vandheroff at that time that he had "received information from citizens that you have made false or disparaging comments about this officer." (*Id*. at ¶ 16). Vanderhoff "has been issued a written warning and threatened with discipline if he and his family does [sic] not stop talking about Defendant Wall." (*Id*. at ¶ 27). Wall also "specifically made mention of Plaintiff's cousin, who owes [sic] a beauty shop and if she does not stop talking about Defendant Wall[,] Plaintiff will be disciplined further. Additionally, Defendant Wall included Plaintiff's family, which is his father and a son, who lives with him." (*Id*. at ¶ 31).

Vanderhoff received an order directing him to "cease and desist conduct which could reasonably be expected to destroy public respect for Nanticoke City Police Officers and/or confidence in the Department." (*Id*. at Ex. "A"). The cease and desist order also referenced the Nanticoke City Police Department Field Regulations, including § 1.04, which provides:

> Loyalty to the Department
>
> Members shall not publically criticize the Department, its policies or other members or employees by talking, writing, or expressing in any other manner, where such talking, writing or other expression is defamatory, obscene, or unlawful, or when the member knows that such criticism is false.

(*Id*. at Ex. "B", § 1.04).

Vanderhoff spoke about corruption in the police department, including Wall's

illegal hiring, unethical conflicts of interest, and obstruction of justice by removing court issued subpoenas and court notices of appearance. (*See id*. at ¶¶ 20-21). Vanderhoff also discussed Wall's selective enforcement of parking tickets. (*See id*. at ¶ 21).

Further, Vanderhoff sustained work-related injuries to his wrists on June 8, 2016. (*See id*. at ¶ 40). He underwent surgery and required physical therapy. (*See id*. at ¶ 42). But, when Vanderhoff returned to work, the City refused to allow him to take time off during his shift to treat with a physical therapist and he was instead required to schedule his medical appointments for work-related injuries outside of his usual shift. (*See id*. at ¶¶ 43-44).

Since commencing this action, Vandheroff has received several write-ups, been accused of conduct unbecoming of an officer, and subject to investigations. (*See id*. at ¶ 57). Wall has also scrutinized Vanderhoff's incident reports while not reviewing those prepared by other officers, removed Vanderhoff from all court hearings for the month of August, and commented negatively about Vanderhoff's mental health. (*See id*. at ¶¶ 58-60).

Based on the foregoing, Vanderhoff commenced this action on May 22, 2018 against the City and Wall. (*See* Doc. 1, *generally*). Vanderhoff filed the Amended Complaint the next day. (*See* Doc. 3, *generally*). Therein, Vanderhoff asserted claims for "prior restraint of speech" and "retaliation for intimate association". (*See id*.). Defendants moved to dismiss the Amended Complaint. (*See* Doc. 5, *generally*). That motion was granted, but Vanderhoff was given leave to file a further amended complaint. (*See* Docs. 11-12, *generally*).

Vanderhoff timely filed his Second Amended Complaint on August 6, 2018. (*See* Doc. 13, *generally*). The Second Amended Complaint contains five (5) causes of action: (1) "prior restraint of speech and overbreath [sic]" (Count I); (2) "retaliation for intimate association" (Count II); (3) violation of the Fair Labor Standards Act (Count III); (4) retaliation for "filing Heart & Lung/Workmen Compensation benefits"

(Count IV); and (5) "retaliation for filing this Complaint" (Count V). (*Id*.). On August 20, 2018, Defendants filed for dismissal of the Second Amendment Complaint in its entirety. (*See* Doc. 14, *generally*). That motion has now been fully briefed and is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

### A.    Prior Restraint.

The First Amendment to the United States Constitution provides in relevant part

that "Congress shall make no law. . . abridging the freedom of speech." U.S. Const. amend. I. Vanderhoff, pursuant to 42 U.S.C. § 1983, contends that the cease and desist order and the City's Field Regulations are impermissible prior restraints on his speech in violation of the First Amendment. (*See* Doc. 13, ¶¶17-21; Doc. 18, 2-6).

"Whereas First Amendment retaliation punishes speech that has already occurred, prior restraint of speech seeks to prevent speech from being expressed to begin with." *O'Donnell v. Knott*, 283 F. Supp. 3d 286, 304 (E.D. Pa. 2017) (citing *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007) ("[U]nlike an adverse action taken in response to actual speech, [a prior restraint] chills potential speech before it happens.")). A public employee, is protected by the First Amendment only

> (1) if he spoke "as a citizen (and not as an employee)," (2) if his speech involved "a matter of public concern," and (3) if his employer lacked an "adequate justification" for treating him differently from the general public, based on a balancing of his and his employer's interests under *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

*De Ritis v. McGarrigle*, 861 F.3d 444, 452 (3d Cir. 2017) (citing *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015)). This is so even where a public employee plaintiff's claim, like that advanced here, is based on a prior restraint of speech. *See*, *e.g.*, *Moonin v. Tice*, 868 F.3d 853, 861 (9th Cir. 2017) ("In assessing a prior restraint, we focus on the text of the policy to determine the extent to which it implicates public employees' speech as citizens speaking on matters of public concern."); *Whitney v. City of Milan*, 677 F.3d 292, 296 (6th Cir. 2012) (Where a public employee plaintiff "raise[s] a First Amendment prior-restraint claim, [the Court must] apply the two-part *Pickering* analysis to determine whether [the mayor's] order was an unconstitutional prior restraint of a public employee's speech." ); *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051-52 (7th Cir. 2008); *Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 2004).

In support of his prior restraint claim, Plaintiff directs attention to the United

States Court of Appeals for the Ninth Circuit's recent decision in *Barone v. City of Springfield*, - - - F.3d - - -, 2018 WL 4211169 (9th Cir. Sept. 5, 2018). In *Barone*, the plaintiff was employed as a community service officer by a police department. *See id*. at *1. After the plaintiff was investigated for two department-related incidents, she was given the opportunity to sign a last chance agreement, which she refused because it prohibited her from reporting on racial profiling and discrimination. *See id*. at *2. The plaintiff was subsequently provided an amended agreement which permitted her to report complaints involving discrimination or profiling but barred her from saying or writing anything negative about the police department, the city, or their employees. *See id*.[1] The plaintiff refused to sign the agreement as amended, so she was terminated. *See id*. at *3. The plaintiff commenced litigation asserting, among other claims, that the amended agreement was an unconstitutional prior restraint. *See id*. *6. The district court granted summary judgment to the defendants on that claim. *See id*.

The Ninth Circuit reversed, finding that the agreement did not meet the requirements set forth under *Pickering*. *See id*. In so doing, the court reiterated that "[w]hile the *Pickering* test is most often applied in the retaliation context, we also use it to evaluate prospective restrictions on government employee speech." *Id*. at *7 (citations omitted). The *Barone* court first found that the agreement clearly extended to matters of public concern. *See id*.

> Paragraph 5(g)'s bar is not limited to speech on internal issues such as logistics or individual personnel disputes.

---

[1] In particular, paragraph 5(g) of the amended agreement stated: "Consistent with SPD General Order 26.1.1.XIX, Employee will not speak or write anything of a disparaging or negative manner related to the Department/Organization/City of Springfield or its Employees. Employee is not prohibited from bringing forward complaints she reasonably believes involves discrimination or profiling by the Department." *Barone*, 2018 WL 4211169, at *7. The General Order referenced therein provided, in part: "Members shall not publicly criticize or ridicule the Department, its policies, or other members. . . Members shall conscientiously avoid the release of any confidential information or information which compromises any investigation." *Id*.

> Instead, Paragraph 5(g) forbids any negative speech about City or Department misconduct except for reporting police "discrimination or profiling." City or Department misconduct, or any other City-related issues, are topics that would be of interest to the community.

*Id*. (internal citations omitted).

Paragraph 5(g) of the agreement also affected citizen speech said the Ninth Circuit:

> First, Paragraph 5(g)'s restriction is not limited to a particular subject matter . . . Paragraph 5(g) flatly bars Barone from speaking negatively about the Department, the City, or their employees. Second, while a bar on only disparaging or negative speech is narrower than a prohibition on all speech, the prohibition on negative speech "suggests that, to the extent Paragraph 5(g) is targeted at all, it is targeted at speech not made pursuant to Barone's official duties."

*Id*. at *8. (internal citation and alteration omitted). Further, the agreement's "open-ended prohibition on 'anything'" beyond discrimination or profiling would "sweep in any disagreement about the City's services, employees, or elected officials, including speech on topics or individuals that do not overlap with [the plaintiff]." *Id*. And, the court found it of no moment that the agreement did not mention citizen speech because it "need not reference citizen speech in order to be understood to forbid citizen speech." *Id*.

The Ninth Circuit proceeded to balance the restrictions on the plaintiff's speech on matters of public concern with whether the defendants provided an adequate justification for implementing the agreement. *See id*. at *9. The defendants failed to do so. *See id*. In particular, the court found unconvincing the justification raised by the defendants that the department would be more efficient if viewed favorably by the public because "maintaining efficiency through avoidance of accountability and limiting inquiry into its practices by the public, is not an acceptable justification in a democratic society." *Id*. at *10 (internal quotation and citation omitted),

The *Barone* court thus concluded that since the agreement restrained the plaintiff's speech as a private citizen on matters of public concern and the defendants

7

did not present an adequate justification to warrant the agreement's restrictions, the prospective restriction in paragraph 5(g) violated the First Amendment. *See id.* at *11.

Vanderhoff's prior restraint claim will not be dismissed. First, Vanderhoff sufficiently alleges that the restrictions apply to matters of public concern, specifically by requiring him to "cease and desist conduct which could reasonably be expected to destroy public respect for Nanticoke City Police Officers and/or confidence in the Department." (Doc. 13, Ex. "A"). Like the restriction in *Barone*, the bar in the cease and desist order applies to any negative speech about the police department and its employees. *Cf. Barone*, 2018 WL 4211169, at *7. Second, the cease and desist order is not limited to a particular topic: it bars Vanderhoff from speaking negatively about the department and its employees. This suggests, at least for present purposes, that the restriction is targeted at speech Vanderhoff makes that are not part of his official duties. *Cf. id.* at *8. And, accepting the facts as pled in the Second Amended Complaint "as true and constru[ing] the [Second Amended C]omplaint in the light most favorable to the nonmoving party," *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015), it is plausible that Defendants lacked an adequate justification for the challenged restriction on his speech. *Cf. Barone*, 2018 WL 4211169, at *9. Vanderhoff's prior restraint claim is sufficiently pled, so he may proceed with Count I of the Second Amended Complaint.

**B.      Intimate Association.**

Count II of the Second Amended Complaint asserts that Defendants deprived Vanderhoff of his constitutional right to intimately associate with his cousin, father, and son.[2] The Constitution protects the right to "intimate association (i.e., certain

---

[2]      "The Supreme Court's decisions do not clearly indicate whether the right to marital or intimate association is rooted in the First Amendment, the Fourteenth Amendment, or both." *Kost v. Baldwin*, No. 16-2008, 2017 WL 4362720, at *4 n.3 (M.D. Pa. Sept. 29, 2017); *see also Martsolf v. Christie*, 552 F. App'x 149, 152 n.3 (3d Cir. 2013) (taking no position on where the right to intimate association stems from).

close and intimate human relationships like family relationships) . . . ." *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 438 (3d Cir. 2000) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)).

> The constitutional right to intimate association attaches only to "certain kinds of highly personal relationships" and affords these relationships "a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L. Ed.2d 462 (1984). The relationships that receive this protection "presuppose deep attachments and commitment to the necessarily few other individuals with whom one shares not only a special community of thought, experiences, and beliefs, but also distinctively personal aspects of one's life." *Board of Directors of Rotary Intern. v. Rotary Club of Duarte*, 481 U.S. 537, 545, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987) (internal citation omitted).

*Martsolf*, 552 F. App'x at 152. A "protected" relationship is "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Pi Lambda Phi*, 229 F.3d at 441. Protected relationships include "those that attend the creation and sustenance of a family-marriage, . . . the raising and education of children, . . . and cohabitation with one's relatives." *Roberts*, 468 U.S. at 619, 104 S. Ct. 3244. To make out such a claim, a plaintiff must allege "that the challenged action 'directly and substantially interfered with' the intimate relationship." *Kost*, 2017 WL 4362720, at *5 (quoting *Freebery v. Coons*, 589 F. Supp. 2d 409, 421 (D. Del. 2008), *aff'd*, 355 F. App'x 645 (3d Cir. 2009)).

The intimate association claim will be dismissed. With respect to the purported interference with Vanderhoff's relationship with his cousin, the Second Amended Complaint is devoid of any facts regarding the nature or extent of that relationship. (*See* Doc. 13, *generally*). As I explained when evaluating this claim in Vanderhoff's Amended Complaint, there does not appear to be any authority supporting the proposition that non-cohabitating cousins have a constitutionally protected right of association with each other as a matter of law. (*See* Doc. 11, 6 (citing *Mcalister v.*

*Trujillo*, No. 10-728, 2011 WL 13289653, at *4 n.2 (D.N.M. Aug. 10, 2011) ("the court stopped far short of finding that the relationship between non-cohabitating adult cousins was protected"); *Frederick v. Brown*, No. 113-176, 2015 WL 4756765, at *25 n.21 (S.D. Ga. Aug. 10, 2015); *Teare v. Indep. Sch. Dist. Bd. of Educ.*, No. 10-1711, 2011 WL 4633105, at *5 (N.D. Ohio Aug. 18, 2011) (no clearly established right of familial association with uncle), *adopted by*, 2011 WL 4633095 (N.D. Ohio Sept. 30, 2011); *Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 452 (W.D. Pa. 2010) (a non-custodial, non-cohabitating, non-in-*loco-parentis* grandmother lacked a constitutionally protected interest in associating with her granddaughters))). Given this, as well as the absence of allegations as to how Wall's conduct directly and substantially interfered with Vandheroff's relationship with his cousin, that aspect of the intimate association claim will be dismissed.

Vanderhoff's intimate association claim as to his relationship with his father and son (who lives with him) also fails. Of course, a father-son relationship is the sort of "highly personal relationship" protected by the Constitution. *See Nittoli v. Morris Cty. Bd. of Comm'rs*, No. 05-4007, 2007 WL 1521490, at *7 (D.N.J. May 22, 2007) (citing *Roberts*, 468 U.S. at 619, 104 S. Ct. 3244). But the Second Amended Complaint does not set forth how the challenged conduct "interfered with, or placed an undue burden, on his intimate association with his [son]. In order to demonstrate a violation of his right to associate with his [son], [Vanderhoff] must allege that [Wall's conduct] prevented him from, or at least interfered with, continuing his relationship with [him]." *Id.* (citing *Lyng v. Int'l Union*, 485 U.S. 360, 365, 108 S. Ct. 1184, 99 L. Ed. 2d 380 (1988)); *see also Sowards v. Loudon Cty.*, 203 F.3d 426, 433 n.2 (6th Cir. 2000) ("the right of intimate association is protected only where the plaintiff alleges an undue interference with a protected intimate relationship."); *Kost*, 2017 WL 4362720, at *5 (dismissing intimate association claim where the plaintiff failed to allege that the challenged action had any direct or substantial interference on her relationship). As Vanderhoff has not done so here, he fails to state an intimate association claim. Count

II of the Second Amended Complaint will be dismissed.

## C. Fair Labor Standards Act.

Count III of the Second Amended Complaint asserts a claim for failure to pay overtime in violation of the FLSA. The FLSA requires employers to pay overtime wages to all covered employees who work in excess of forty hours in a given workweek. *See* 29 U.S.C. § 207(a)(1). To state a *prima facie* claim under the FLSA, a plaintiff must allege that: (1) the plaintiff was an "employee," as defined by the FLSA; (2) the defendant was "engaged in commerce," as defined by the FLSA; and (3) the plaintiff was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week. *See Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822, at *3 (E.D. Pa. Oct. 7, 2016).

Vanderhoff will be permitted to proceed with his FLSA claim. Accepting the facts as pled in the Second Amended Complaint as true, Vanderhoff alleges that he was an employee as defined by the statute, that the City was engaged in commerce, and that he was not paid overtime compensation as required under the FLSA. On these facts, Vanderhoff has stated a claim for a violation of the FLSA.[3]

## D. Retaliation for Filing for Heart & Lung/Workmen Compensation Benefits.

Vanderhoff claims in Count IV of the Second Amended Complaint that he was retaliated against for filing for workers' compensation and heart and lung benefits. "Under Pennsylvania law, . . . requesting worker's compensation is a protected activity." *Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 733 F. App'x 632, 639 (3d Cir. 2018) (citing *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998)). While the

---

[3]  Defendants argue that the FLSA claim fails because Vanderhoff did not exhaust his administrative remedies under an applicable collective bargaining agreement which purportedly required him to pursue a grievance over this issue. (*See* Doc. 15, 10-12; Doc. 19, 4-5). But, nothing in the Second Amended Complaint suggests that Vanderhoff's employment was governed by a collective bargaining agreement, nor has such a document been submitted by any of the parties. Thus, I am unable to address this issue at present.

Pennsylvania Supreme Court has not set forth the precise elements of such a retaliation claim, the Third Circuit, in a nonprecedential decision, has predicted that the Pennsylvania Supreme Court would apply the framework for Title VII claims to Pennsylvania retaliation claims. *See Theriault v. Dollar General*, 336 F. App'x 172, 175 (3d Cir. 2009). The elements of such a claim are: (1) the plaintiff engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal nexus existed between his protected activity and the adverse employment action. *See Runion v. Equip. Trans., LLC*, No. 15-2159, 2017 WL 3839917, at *3 (M.D. Pa. Sept. 1, 2017) (citing *Theriault*, 336 F. App'x at 174).

Dismissal of Vandheroff's retaliation claim for seeking worker's compensation and heart and lung benefits is not appropriate at present. Here, Vanderhoff alleges that after he sustained an injury and requested benefits, Defendants refused to provide him overtime pay or permit him to attend physical therapy during working hours. (*See* Doc. 13, ¶ 51). Vanderhoff thus pleads both protected activity and adverse employment action.

Defendants contend, however, that the Second Amended Complaint is devoid of "any timeline that would meet the standard for establishing a causal connection." (Doc. 15, 13). The Third Circuit recently discussed the causation requirement when evaluating a First Amendment retaliation claim on a motion to dismiss. *See Conard v. Pa. State Police*, - - - F.3d - - -, 2018 WL 4089592, at *4 (3d Cir. Aug. 28, 2018); *accord Rink v. Northeastern Educ. Intermediate Unit 19*, 717 F. App'x 126, 138 (3d Cir. 2017) ("The causal connection between the protected activity and the retaliation is established in the same manner as under Title VII & § 1983"); *Brennan v. Norton*, 350 F.3d 399, 420 (3d Cir. 2003) ("The causation required to establish a claim under § 1983 is identical to that required under Title VII."). The *Conard* court explained:

> A plaintiff sufficiently pleads her case with respect to causation if she pleads that her "constitutionally protected conduct was a substantial or motivating factor" for the retaliatory conduct. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). While "unusually suggestive" timing can

provide evidence of causation, causation also can be shown "from the evidence gleaned from the record as a whole." *Id.* at 424. Conrad can attempt to show retaliation through a "pattern of antagonism" in addition to the timing of events. *Id.* at 422.

The magistrate judge in this second case in recommending that the District Court make a finding that Conrad had not adequately pled causation, relied on a group of cases for the proposition that causation may be implied by temporal proximity only if the alleged retaliation follows the protected conduct within a number of days, rather than weeks or months. However, those cases largely involved summary judgment proceedings where the plaintiff had had an opportunity to marshal evidence and had chosen to rely on circumstantial evidence to prove causation based on the timing of events.

By contrast, at the motion to dismiss stage, the District Court was obliged to accept Conrad's factual allegations as true and to draw reasonable inferences regarding causation in her favor. After all, her allegations do not lack plausibility. In general, there is not a bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (cautioning that "a specified time period cannot be a mechanically applied criterion"). While obviously we take no position on the truth or falsity of Conrad's claims, we are constrained to reverse the dismissal of the retaliation claim because, to the extent that the Court found that causation could not be proven because of the passage of time between Conrad's protected conduct, *i.e.*, bringing her initial action, and the retaliation, that conclusion was premature at the motion to dismiss stage.

*Conard*, 2018 WL 4089592, at *4-5.

Accepting the allegations in the Second Amended Complaint as true and drawing all reasonable inferences as to causation in Vanderhoff's favor, he sufficiently pleads a causal connection between his request for benefits and Defendants' denial of overtime and/or refusal to allow him to attend therapy during his working hours. More particularly, after Vanderhoff was injured in June 2016, he was denied overtime for hours incurred working in early November 2016. (*See* Doc. 13, ¶¶ 40, 46). As *Conard* makes clear, finding that "causation [cannot] be proven because of the passage of time between [Vanderhoff's] conduct . . . and the retaliation" would be "premature at the motion to dismiss stage." *Conard*, 2018 WL 4089592, at *5. The retaliation

13

claim in Count IV of the Second Amended Complaint will not be dismissed.

## E.     First Amendment Retaliation.

Vanderhoff lastly asserts that he was retaliated against in violation of the First Amendment for commencing this litigation. Vanderhoff alleges that after this suit was filed on May 23, 2018, he was written up on several occasions, accused of conduct unbecoming of an officer, and subject to investigations. (*See* Doc. 13, ¶ 57). Vanderhoff further avers that he was removed from all court hearings, and that Defendant Wall scrutinized his work in a manner different from his review of other employees. (*See id*. at ¶¶ 58-59). Wall also commented about Vanderhoff's mental health in front of other officers. (*See id*. at ¶ 60). Defendants argue that Count V of the Second Amended Complaint should be dismissed because Vanderhoff fails to plead any of the necessary elements of a First Amendment retaliation claim. (*See* Doc. 15, 15-17).

> To establish a First Amendment retaliation claim, a public employee must show that his speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action. *See Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir.2009). If the employee establishes both of those predicates, the burden shifts to the employer to show that it would have taken the same action even if the speech had not occurred. *Id*.

*Flora v. Cty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015).

A public employee's filing of a lawsuit can qualify as protected activity. *See*, *e.g.*, *Carroll v. Clifford Twp.*, 625 F. App'x 43, 49 (3d Cir. 2015). Of course, the public employee must still show that his or her lawsuit relates to a matter of public concern. *See*, *e.g.*, *Morgan v. Covington Twp.*, 563 F. App'x 896, 900 (3d Cir. 2014); *Johnson v. Glassport Borough*, No. 16-1351, 2017 WL 1179011, at *5 (W.D. Pa. Mar. 30, 2017) (citing *Borough of Duryea,v. Guarnieri*, 564 U.S. 379, 399 (2011)).

Vanderhoff adequately pleads the necessary elements of the claim in Count V. For present purposes, Vanderhoff sufficiently alleges that he spoke as a citizen on a matter of public concern when he commenced this litigation. In particular, Vanderhoff

alleges that he spoke on issues regarding the purported illegal hiring of Wall as well as corruption in the police department, such as the selective enforcement of tickets and the removal of court issued subpoenas and notices. (*See* Doc. 13, ¶¶ 20-21). It is plausible on these facts that Vanderhoff spoke as a citizen on a matter of public concern. *See*, *e.g.*, *Bifano v. Borough*, No. 16-245, 2016 WL 7404610, at *8 (M.D. Pa. Dec. 22, 2016) (allegations of "wrongdoing or abuse of public office" against chief of police were matters of public concern sufficient to withstand a 12(b)(6) motion). Vanderhoff further alleges that after suit was filed against Defendants, his pay was reduced because he was no longer scheduled for hearings, he received several write-ups, and he was accused of misconduct. (*See* Doc. 13, ¶¶ 57-58). On these allegations, Vanderhoff sufficiently identifies retaliatory acts that would deter a person of ordinary firmness from exercising his constitutional rights. *See*, *e.g.*, *Southerton v. Borough of Honesdale*, No. 17-165, 2018 WL 1035774, at *4 (M.D. Pa. Feb. 23, 2018). Count V of the Second Amended Complaint will not be dismissed.

**F.     Official Capacity Claims Against Wall.**

The claims against Wall in his official capacity will be dismissed. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent ." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). As a result, the Supreme Court has stated that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief," *Graham*, 473 U.S. at 167 n. 14, 105 S. Ct. 3099, and that "[s]uits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25, 112 S.Ct. 358. Thus, because official capacity claims against an individual defendant are duplicative of claims brought against a municipality, "courts sitting in the Third Circuit have dismissed defendants sued in their official capacity when the same claims

are made against the municipality." *Dubas v. Olyphant Police Dep't*, No. 11-1402, 2012 WL 1378694, at *4 (M.D. Pa. Apr. 20, 2012) (citing *Whaumbush v. City of Phila.*, 747 F. Supp. 2d 505, 510 n. 2 (E.D. Pa. 2010); *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009)); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them. . . . Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."). As Vanderhoff has brought suit against the City, the official capacity claims against Wall will be dismissed.

## G. Qualified Immunity.

Defendants seek dismissal of the claims against Wall in his individual capacity on qualified immunity grounds.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, - - - U.S. - - -, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)). The Third Circuit has remarked that qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Blackhawk v. Pa.*, 381 F.3d 202, 215 (3d Cir. 2004). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). "First, a court must decide 'whether the facts that a plaintiff has shown make out a violation of a constitutional right.' And second, the court must determine 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.' Courts may begin their consideration with either prong." *Id.* (alteration omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

"To be clearly established, a right must be sufficiently clear 'that every

reasonable official would have understood that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664, 132 S. Ct. 2088 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). This means "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044. Essentially, "in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). This may be the case "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct violated constitutional rights." *Id*. at 740, 122 S. Ct. 2508 (citation omitted).

At present, it is premature to determine if Wall violated Vanderhoff's First Amendment rights or whether a finding of qualified immunity is warranted. *See*, *e.g.*, *Martucci v. Borough*, No. 17-1671, 2018 WL 1641232, at *12 (M.D. Pa. Apr. 5, 2018). "Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation," *Phillips v. County of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008), "[a] decision as to qualified immunity is premature when there are unresolved disputes of historical facts relevant to the immunity analysis." *Id*. As such, "'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.'" *Williams v. Papi*, 30 F. Supp. 3d 306, 314 (M.D. Pa. 2014) (quoting *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009)); *accord Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) ("qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."). The factual record in the matter *sub judice* is insufficiently developed to conduct a qualified immunity analysis, rendering a decision on qualified immunity premature at the pleadings stage here. *See*, *e.g.*, *Benedict v. Borough of Malvern*, No.

15-6462, 2016 WL 3059540, at *3 (E.D. Pa. May 31, 2016); *accord Olson v. Ako*, - - - F. App'x - - -, 2018 WL 1391708, at *4 (3d Cir. Mar. 20, 2018) (reversing denial of qualified immunity on a motion to dismiss where there was a "detailed factual record" before the district court that had been provided in response to its prior decision granting a Rule 12(e) motion for a more definite statement). In addition, Vanderhoff, for reasons previously explained, has stated viable claims under the First Amendment. At this stage of the proceedings, it does not appear that qualified immunity exists as a matter of law based on the face of the Second Amended Complaint. Accordingly, Defendants' motion to dismiss based on qualified immunity will be denied, but that defense can be raised again after discovery is conducted and the factual record is fully developed.

**H.    *Monell.***

Defendants next seek dismissal of the *Monell* claims in the Second Amended Complaint. "[M]unicipalities and other local government units [are] to be included among those persons to whom § 1983 applies," and municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice. 436 U.S. at 690-91, 98 S. Ct. 2018. A § 1983 claim against a municipality thus requires a plaintiff to: (1) identify a policy or custom that deprived him of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626

(1997); *Bell v. City of Phila.*, 629 F. App'x 214, 216 (3d Cir. 2015). The Third Circuit has explained that a municipality can be liable for the torts of its employees in one of three ways:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Independent School District*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

Defendants' motion to dismiss the claims against the City will be denied. Vanderhoff avers that the majority of the allegedly unconstitutional actions were done by Wall, the City Chief of Police, *i.e.*, a municipal decisionmaker. *See Martucci v. Borough*, No. 17-1671, 2018 WL 1641232, at *11 (M.D. Pa. Apr. 5, 2018). Vanderhoff also identifies a City policy - the Field Regulations - which he claims, at least in part, violates his constitutional rights. While Vanderhoff may ultimately be unable to establish his *Monell* claims at a later stage of this case, at present he has provided sufficient factual matter to state claims against the City that are plausible on their face. *See id*. at *12.

## I. Punitive Damages.

Lastly, Defendants seek dismissal of the demand for punitive damages against Defendant Wall. (*See* Doc. 15, 21-22).

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

Punitive damages may also be recovered on claims for intentional infliction of emotional distress. *See A.C. v. Scranton Sch. Dist.*, 191 F. Supp. 3d 375, 392 (M.D. Pa. 2016). Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Miller v. Helm*, No. 17-1590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017). Indeed, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods., Inc.*, No. 14-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017).

The challenge to the demand for punitive damages fails. The allegations in the Second Amended Complaint are sufficient to support a facially plausible claim for punitive damages. As such, the demand for punitive damages will not be dismissed.

## J.     Leave to Amend.

Third Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

As stated, Vanderhoff's intimate association claim is subject to dismissal pursuant to Rule 12(b)(6). In evaluating the sufficiency of this claim when addressing the motion to dismiss the Amended Complaint, I explained that the intimate association claim failed because Vanderhoff did not allege facts as to how Wall's conduct interfered with his relationship with his family. (*See* Doc. 11, 6). Yet, despite being afforded the opportunity to amend, Vanderhoff did not cure the identified deficiencies and the present iteration of the intimate association claim is no closer to

stating a plausible claim for relief.  Thus, I find that leave to further amend the intimate association claim would be futile.  Count II of the Second Amended Complaint will be dismissed with prejudice.

## IV. Conclusion

For the above stated reasons, the motion to dismiss the Second Amended Complaint will be granted in part and denied in part.  The intimate association claim in Count II of the Second Amended Complaint and the official capacity claims against Defendant Wall will be dismissed with prejudice.  The motion to dismiss will be denied in all other respects.

An appropriate order follows.


September 24, 2018                              /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                               United States District Judge