THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMOS VANDERHOFF, | : |
| Plaintiff, | : CIVIL ACTION NO. 3:18-CV-1071 |
| | : (JUDGE MARIANI) |
| v. | : |
| CITY OF NANTICOKE and POLICE CHIEF THOMAS WALL, | : |
| Defendants. | : |

FILED
SCRANTON
OCT 26 2021
PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION

Here the Court considers Defendants' Motion in Limine to Preclude Evidence of Chief Thomas Wall's Hiring (Doc. 66). With the motion, Defendants seek to preclude Plaintiff from introducing at trial any evidence regarding Defendant Wall's hiring, the Court of Common Pleas decision regarding his hiring, and anything related to the Court of Common Pleas matter. (*See* Doc. 66-2 at 1.) Defendants assert that the evidence related to Ms. Kroll should be excluded pursuant to Federal Rules of Evidence, 401, 402, and 403. (Doc. 67 at 3; Doc. 71 at 2-3.) For the reasons discussed below, the Court will defer ruling on the motion until trial.

### II. BACKGROUND

As of the July 31, 2019, filing of Plaintiff Amos Vanderhoff's Third Amended Complaint (Doc. 29), the operative complaint in this matter, Plaintiff was employed by Defendant City of Nanticoke as a police officer and Defendant Thomas Wall was the Police

Chief of the City of Nanticoke. (Doc. 29 ¶¶ 1, 3.) Plaintiff alleges that at all relevant times, Defendant Wall was an official policymaker who made decisions to restrain Plaintiff's speech and association. (*Id.* ¶ 4.) Plaintiff avers that, at all relevant times, Defendant Wall was a servant, agent, and/or employee of Defendant City and "was acting under color of state law when he engaged in official policy, custom, and decision to violate Plaintiff's First Amendment rights and liberty interest protected by the Fourteenth Amendment." (*Id.* ¶ 5.) Plaintiff further avers that Defendant City "acquiesced in all retaliatory actions taken by its public official and personnel since it has knowledge of the same but has refused to remedy the situation." (*Id.* ¶ 6.)

Plaintiff's Third Amended Complaint (Doc. 29) contains six counts, one of which (Count II – Retaliation for Intimate Association) Plaintiff acknowledges was dismissed with prejudice (*id.* at 7 n.1). Count I, "Prior Restraint of Speech and Overbreadth," is lodged against both Defendants. (Doc. 29 at 3.) This claim is based on Plaintiff's assertions that Defendant Wall (1) issued a "cease and desist Order" (*see* Ex. A, Doc. 29 at 16) on May 11, 2018, stating that he had "received information from citizens that you have made false or disparaging comments about this officer" (*id.*; Doc. 29 ¶ 16)[1] and (2) told Plaintiff on or

---

[1] The May 11, 2018, correspondence referenced "FR Manual, Section 1.02 and Section 1.04." (Doc. 29 at 16.) These provisions are set out in Plaintiff's Ex. B, a Nanticoke City Police Department Directive, "Subject: General Requirements." (Doc. 29 at 17.) Section 1.01 states that "[t]he purpose of this regulation is to establish policy and guidelines of general requirements for member's conduct." (*Id.*) Section 1.02 defines "Unbecoming Conduct:": "Unbecoming conduct is that type of conduct which could reasonably be expected to destroy public respect for Nanticoke City Police Officers and/or confidence in the Department. Members shall not conduct themselves in a manner which is unbecoming to a police officer." (*Id.*) Section 1.04 addresses "Loyalty to the Department": "Members shall not publicly criticize the

2

about May 21, 2018, that Plaintiff and his family (Plaintiff's father and son and cousin who owns a beauty shop) were not allowed to talk about Defendant Wall to the public (*id.* ¶¶ 14-15). Defendant Wall stated in the May 11, 2018, correspondence that Plaintiff was to "cease and desist conduct which could reasonably be expected to destroy public respect for Nanticoke City Police Officers and/or confidence in the Department" and advised that "[t]his letter will also serve as a warning notice, if similar conduct is brought to my attention progressive discipline will follow." (Doc. 29 at 16; *see also id.* ¶ 27.) Plaintiff maintains that he has engaged in speech about

> the illegal hiring of Defendant Wall and his illegal conduct, including but not limited to violating citizens' rights related to parking tickets [and] . . . corruption within the Police Department at the direction of Defendant Wall, including but not limited to selective enforcement of parking tickets, unethical conflict of interests, and obstruction of justice by removing court issued subpoenas and court notices of appearance.

(Doc. 29 ¶¶ 20-21.) Plaintiff concludes that, with this behavior, Defendants are placing a restriction on Plaintiff and his family's free speech as citizens and their association with each other. (*Id.* ¶ 29.)

Count III, "Violation of Fair Labor Standards Act (FLSA)," is lodged against Defendant City. (Doc. 29 at 9.) Plaintiff contends that he suffered a work injury in which he injured his wrists on or about June 8, 2016. (Id. ¶ 40.) He further contends that, upon his

---

Department, its policies or other members or employees by talking, writing, or expressing in any other manner, where such talking, writing or other expression is defamatory, obscene, or unlawful, or when the member knows such criticism to be false." (*Id.*)

return to work following surgery, Defendant City refused to allow him time off during his shift to treat with a physical therapist and, as a result, he had to schedule medical appointments for his work-related injury outside his normal shift and incurred overtime for which he was not paid. (*Id.* ¶¶ 42-45.) He also asserts he is entitled to overtime pay which he incurred after he was subpoenaed on June 4, 2019, to appear at a court hearing by the Pennsylvania Labor Relations Board and was denied the one hour of overtime he accrued as a result of that appearance. (*Id.* ¶¶ 49-52.)

Count IV, "Retaliation for Filing Heart & Lung/Workmen Compensation Benefits," is filed against both Defendants. (Doc. 29 at 11.) This claim relates to Plaintiff's June 2016 injury. (*Id.* ¶ 54.) Plaintiff maintains that "[i]n direct retaliation for having sustained an injury and sought benefits covering the same, Plaintiff was retaliated against by being denied overtime pay and/or allowed to attend treatment sessions during working hours. (*Id.* ¶ 55.)

Count V, "Retaliation for Filing This Complaint," is lodged against both Defendants. (Doc. 29 at 12.) Plaintiff alleges that he "filed this lawsuit as a citizen . . . on a matter of public concern since it dealt with the official malfeasance of the Police Chief. (*Id.* ¶¶ 59-60.) and asserts that he has been retaliated against in several ways" and, as a result, he has been retaliated against. (*Id.* ¶¶ 59-61.) Without identifying the person responsible, Plaintiff identifies the following conduct as retaliatory: "being written up on several occasions, . . . being accused of conduct unbecoming, suspended without pay, denied overtime, denied special details, denied training, subject to investigations, harassed, . . . interference with his

4

work duties, specifically contacting victims of crimes and inquiring if Plaintiff acted appropriately." (*Id.* ¶ 61.) As to Defendant Wall specifically, Plaintiff states that he

> has suffered loss of pay because Defendant Wall has removed him from all court hearings for the month of August, which not only interferes with his professional duties to prosecute cases, but also his pay[,] Defendant Wall has harassed Plaintiff by scrutinizing his incident reports while not reviewing other police officers in the department[,] [and] Defendant Wall has even commented negatively about Plaintiff's mental health in front of other officers.

(*Id.* ¶¶ 62-64.)

Count VI, "Retaliation for Being Subpoenaed," is lodged against both Defendants. (Doc. 29 at 12.) This claim relates to the June 4, 2019, subpoena by the Pennsylvania Labor Relations Board in response to which Plaintiff traveled to Harrisburg to attend a hearing on June 21, 2019. (*Id.* ¶ 66-67.) Plaintiff asserts that he was retaliated against because he was denied the one hour of overtime which he incurred in complying with the subpoena. (*Id.* ¶¶ 70-71.)

Plaintiff initially filed this action on May 22, 2018, (Doc. 1) and filed an amended complaint (Doc. 3) on May 23, 2018. By Order of September 20, 2018, Defendants' motion to dismiss the amended complaint (Doc. 5) was granted and Plaintiff was given leave to file a further amended complaint. (Doc. 12.) On August 6, 2018, Plaintiff filed his Second Amended Complaint (Doc. 13) and on August 20, 2018, Defendant filed a motion to dismiss the Second Amended Complaint (Doc. 14). By Order of September 24, 2018, the Court dismissed Plaintiff's claim for "Retaliation for Intimate Association" (Count II) with prejudice and dismissed the official capacity claims against Defendant Police Chief Thomas Wall with

prejudice. (Doc. 22 ¶ 2.) Defendants' motion was otherwise denied. (*Id.* ¶ 3.) Thereafter, Plaintiff filed the "Unopposed Motion for Leave to File Third Amended Complaint" (Doc. 24) based on the post-complaint occurrence of several events. The motion was granted (Doc. 27) and Plaintiff filed the Third Amended Complaint (Doc. 29) on July 31, 2019.[2]

In accord with the Court's May 5, 2021, Order (Doc. 63 ¶ 5(a)), Defendants timely filed the motion in limine now under consideration (Doc. 66) along with the supporting brief (Doc. 67) on September 23, 2021. Plaintiff filed his opposition brief (Doc. 69) on October 6, 2021. With the filing of Defendants' reply brief (Doc. 71) on October 12, 2021, this motion was fully briefed and ripe for consideration. Trial is scheduled to commence on November 8, 2021. (*See* Doc. 63 ¶ 1.)

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F.

---

[2] Prior to March 23, 2020, this case was assigned to the Honorable A. Richard Caputo.

6

Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000). The Supreme Court has long recognized that "[a] reviewing court is handicapped in an effort to rule on subtle evidentiary questions outside a factual context." *Luce v. United States*, 469 U.S. 38, 41 (1984). Thus, a district court's ruling on a motion in limine "is subject to change when the case unfolds." *Id.* While this is particularly so if the actual testimony at trial differs from what was anticipated in a party's motion in limine, but "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the

potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

### III. ANALYSIS

As set out above, Defendant relies on Federal Rules of Evidence 401, 402, and 403. *See supra* p. 1. The motion seeks to exclude evidence related to Defendant Wall's hiring and the related Common Pleas Court action as irrelevant and unduly prejudicial. (Doc. 67 at 3; Doc. 71 at 2-3.) Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 402, "irrelevant evidence is not admissible." Fed. R. Evid. 402. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Relevance in this matter must be considered in the context of the legal framework within which Plaintiff's claims are analyzed. The five remaining counts encompass claims of First Amendment freedom of speech and retaliation, Fair Labor Standards Act violations, and state law violations. Based on the state of the record to date, questions of what evidence may or may not be relevant and admissible are difficult to discern. However, here evidence which Defendants seek to preclude about Defendant Wall's hiring are, in part, the

subject of the speech at issue in Plaintiff's First Amendment claim. In Count I alleging "Prior Restraint of Speech and Overbreadth," Plaintiff specifically avers that "Plaintiff, as a Citizen and not as a Police Officer, has engaged in free speech speaking *about the illegal hiring of Defendant Wall* and his illegal conduct, including but not limited to violating citizens' rights related to parking tickets." (Doc. 29 ¶ 20 (emphasis added).)

The context of a public employee's speech is determinative of whether the speech activity is protected under the First Amendment. "[T]he First Amendment protection of a public employee's speech depends on a careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Lane v. Franks*, 573 U.S. 228, 231 (2014) (quoting *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)). In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court described the two-step inquiry into whether a public employee's speech is entitled to protection:

> The first requires determining if the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

547 U.S. at 418 (citations omitted).

The foregoing authority demonstrates that the subject of Plaintiff's speech, which includes the hiring of Defendant Wall, is relevant to his First Amendment claims. The veracity and accuracy of Defendant's speech is also at issue based on Defendant Wall's correspondence/warning notice of May 11, 2018, wherein regulations were cited which prohibit "unbecoming conduct" and criticism of the department when the expression is "defamatory, obscene, or unlawful, or when the member knows that such criticism is false." See supra pp. 2-3 & n.1 (citing Pls.' Exs. A and B, Doc. 29 at 16-17).

Although the Court concludes that the subject of Plaintiff's speech is relevant, the Court lacks substantive information about the issue and cannot know precisely what evidence will be offered and for what purpose evidence related to Defendant Wall's hiring will be presented at trial. Because the Court cannot now determine whether the evidence will be admissible, the Court will defer ruling on Defendants' motion until trial.

### IV. CONCLUSION

For the reasons discussed above, the Court will defer ruling on the issues raised in Defendant's Motion in Limine to Preclude Evidence of Chief Thomas Wall's Hiring (Doc. 66) until trial and must be raised by timely objection in response to any attempt by Plaintiff to

elicit testimony on the issues in dispute. A separate Order is filed with this Memorandum Opinion.

_____
Robert D. Mariani
United States District Judge